(December 16, 1902.)

## SOMMERCAMP v. KELLY.
### [71 Pac. 147.]

CITY COUNCIL—SPECIAL MEETINGS — CITY ELECTIONS INCREASING INDEBTEDNESS.—Where there is a meeting of the city council, and the mayor and all councilmen are present, excepting one, they may transact any business that does not incur an indebtedness, even though the call was not made in writing, as required by section 1 of the Session Laws of 1899, page, 29.

NOTICE OF ELECTION BY MAYOR TO VOTE ON ISSUANCE OF BONDS.— Where the mayor publishes a proclamation for a period of more than thirty days in a newspaper of general circulation in the city, giving the time and place when an election will be held to vote upon a proposition to issue bonds for municipal improvements, it is a sufficient compliance with section 2 of the Session Laws of 1899, page 30.

(Syllabus by the court.)

APPEAL from District Court, Washington County.

Facts fully set forth in opinion.

Lot L. Feltham, for Appellant.

All the authorities cited by appellant bearing upon the points decided by the court are cited in the opinion.

There was no appearance on behalf of respondent and no brief filed.

STOCKSLAGER, J.—This is an action to enjoin the city council of the city of Weiser from issuing and disposing of certain bonds of the city. The complaint alleges: "That Thomas E. Kelly is mayor of, and John J. Fuller, J. B. Coakley, A. W. Ryan, A. J. Hopkins, A. F. Hitt, and J. A. McCune are the councilmen of, the city of Weiser. That on the nineteenth day of June, 1902, pursuant to a call of said mayor, the council convened in special session for the purpose of considering the matter of submitting to the qualified taxpayers the question of the issuance of municipal coupon bonds for the purpose of constructing in said city a system of waterworks, electric lights, and for the further purpose of purchasing an apparatus for fire department. That at said meeting, a quorum being present, it was determined to ascertain the assessed valuation of the real estate of said city for the year 1901, as a basis upon which to calculate the amount of bonds that may be voted for said purpose, and thereupon a committee consisting of two of said councilmen was appointed to procure from the county assessor of the county of Washington a certificate showing the assessed valuation of the real estate of said city for the year 1901. That on the twenty-third day of June, 1902, there was filed in the office of the clerk of said city the certificate of said assessor of Washington county, Idaho, showing that the assessed valuation of the real estate of said city for 1901 aggregated the amount of $268,900.40, and thereafter, on said day, at an adjourned meeting of said council, an ordinance—No. 62 of the ordinances of said city—was passed, providing for an election to be held within the said city on the thirty-first day of July,

1902, for the purpose of submitting to the electors and taxpayers of said city the question of the issuance by said city of municipal coupon bonds, in accordance with the terms of said ordinance in the aggregate sum of $40,000, which ordinance was duly passed and approved on the twenty-third day of June, 1902, and was duly published for six consecutive weeks in the 'Weiser Signal,' a semi-weekly newspaper of general circulation, published at Weiser, and for five consecutive weeks in the 'Weiser World,' a weekly newspaper of general circulation published at Weiser, prior to said election. That said ordinance No. 62 provided for the issuance of $33,500 of bonds for the construction of municipal waterworks, for the issuance of $3,500 of bonds for the construction of an electric light plant, and for the issuance of $3,000 of bonds for the establishment and equipment of a fire department, and further provided for a sinking fund for the payment of said bonds at maturity, and the interest accruing thereon. That in accordance with the provisions of said ordinance No. 62, the said mayor issued his proclamation, giving notice of said special election, which proclamation was duly published in the 'Weiser Signal,' a semi-weekly newspaper of general circulation, etc., in the issue of June 25, 1902, and was also published in the 'Weiser World,' of like circulation, in the issue of June 27, 1902. That on the thirty-first day of July, 1902, Stewart H. Travis, city clerk of said city, in accordance with the requirements of section 5 of ordinance No. 31 of said city, relating to elections, made out and posted in three public places in each of the three wards of said city a notice of said special bond election. That thereafter, and in accordance with said proclamation of said mayor, the registrars of the several wards of said city, theretofore appointed, opened their books for the registration of all qualified electors who were taxpayers of said city, and due registration was made of all persons qualified and presenting themselves for registration during the period of time set forth in said proclamation, and after the closing of said period of registration said registrars duly certified their lists of registry to the clerk of said city, showing the legal registration of all persons qualified and presenting themselves for registration, and

said registrars complied strictly with all the laws and requirements of registration in said election, as shown by the certificate of the city clerk. That the time and place of holding the said election were known to all the qualified electors in said city, and thereafter, on the thirty-first day of July, 1902, there was held in said city of Weiser said special election in pursuance of the notices so given, at which all of the qualified electors who were taxpayers of said city, and who were duly registered for said special election, were permitted to cast their ballots for or against said propositions. That on the first day of August, 1902, said mayor and city council met in special session for the purpose of canvassing the votes cast, at which session, upon the canvass of all legal votes so cast, it was determined and certified that said first proposition so submitted was carried by a total vote of one hundred and twenty-two for, and but fifteen against, said proposition. That said second proposition was carried by a total vote of one hundred and sixteen votes for and but fifteen against said proposition, and that said third proposition was carried by a total vote of one hundred and sixteen for and but seventeen against said proposition, as shown by the records of said meeting. That, in accordance with the canvass of said vote, said mayor and council duly certified on said first day of August, 1902, to the said vote on said bond election in writing, and filed said certificate in the office of the city clerk. That the said defendants have certified and declared, after a canvass of the votes cast at said special election, that over two-thirds of the qualified electors who are taxpayers of said city voting at said city election assented to the issuance of said bonds and the incurring of the indebtedness thereby created for the purposes aforesaid, and said defendants threaten to issue said bonds, and, unless restrained by the order of this court, will proceed to issue said bonds, and sell and deliver them into the hands of buyers, and will thus create a bonded indebtedness against said city in the sum of $40,000, and will proceed to levy and collect an annual tax upon all taxable property in said city to create a fund from which to pay the interest on said bonds semi-annually as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, and will

thus create a lien upon the property of the plaintiff, to his great injury therein, and plaintiff has no plain, speedy, or adequate remedy in the premises in the ordinary course of law. That said proposed issue of bonds is wrongful and without authority of law, for the reason that the requirements of law relating to special elections have not been complied with in the following particulars, to wit: 1. That said special meetings held on the nineteenth and twenty-third days of June, 1902, by the said mayor and council of said city, at which meeting of June 23d said ordinance No. 62 was presented and passed, were not called as required by section 1831 of the Political Code, as shown by Exhibit 'A.' 2. That thirty days' notice was not given in a newspaper of said city, as required by section 1938 of the Political Code, as shown by Exhibits 'B' and 'C.' " Then follows a prayer for a perpetual injunction and for costs. To this complaint a demurrer was interposed, and overruled by the court, to wit: "Come now the defendants in the above-entitled cause by their attorney, Lot L. Feltham, as city attorney of said city of Weiser, Idaho, and demurs to the complaint of plaintiff filed herein, and for grounds of demurrer says: 1. That the said complaint of plaintiff does not state facts sufficient to constitute a cause of action." The defendants refusing to plead further, a judgment was entered in accordance with the prayer of plaintiff's complaint granting a perpetual injunction against the defendants restraining them from the acts complained of. We have set the pleadings out in full, omitting the exhibits, and will only refer to them as it may be necessary in passing upon the questions raised by the complaint. We are not favored with a brief on behalf of respondent, and will confine this opinion to the questions submitted by the complaint on the errors assigned and urged by appellant in his brief.

The first question is, Were the special meetings of the city council held on the nineteenth and twenty-third days of June, 1902, legally held; and if not, is the error sufficient to render all proceedings thereafter void? Section 1831 of the Political Code provides: "The mayor or any three councilmen shall have power to call special meetings of the council the object of which shall be submitted to the council in writing, and the call and object,

as well as the disposition thereof, shall be entered upon the journal by the clerk." Exhibit "A" of the complaint is as follows: "Weiser, Idaho, June 19, 1902. The city council met in special meeting at the council chamber on the evening of the above date, pursuant to call of the mayor, for the purpose of . . . . and for the purpose of considering the matter of a municipal light and water plant, and for the transaction of such other and further business as might come before the meeting. The following named were present at roll-call: Mayor Kelly, Councilmen Hitt, McCune, Hopkins, Fuller, Coakley. Absent, Ryan. There being a quorum present, business proceeded as follows." It is then shown that a committee of two was appointed to ascertain the assessed valuation of the real estate in the city of Weiser for the year 1901, and to see if help can be obtained to do the work. Councilmen Hitt and McCune were appointed on the committee. It is also shown that at said meeting the city attorney was instructed to prepare the necessary ordinance and the papers to call an election to vote on the question of bonding the city for the construction of a water and light plant to be owned by the city. At the meeting of June 23, 1902, the record shows that Mayor Kelly, Councilmen Hitt, Ryan, Hopkins, Coakley, and Fuller were present. Absent, McCune. A quorum being present, business proceeded as follows: "Ordinance No. 62 was passed by the following vote: Aye, Councilmen Hitt, Ryan, Hopkins, Coakley, Fuller. Nay, none. Absent, McCune. Election officers were then appointed and an adjournment taken until June 30th." Section 1831 of the Political Code provides: "The mayor or any three councilmen shall have the power to call special meetings of the city council the object of which shall be submitted to the council in writing, and the call and object, as well as the disposition thereof, shall be entered upon the journal by the clerk." From this record it is apparent that the only business transacted at the meeting of June 19, 1902, was the appointment of a committee to ascertain the valuation of the real estate in the city of Weiser for the year 1901, and a resolution or order instructing the city attorney to prepare an ordinance to submit to the taxpayers a proposition to bond the city for a system of water-

works, electric light plant, and fire department. The meeting was then adjourned until June 23d. At the meeting of June 23d the record shows that the mayor and all of the members of the city council were present, excepting McCune, who was present at the meeting of June 19th; hence it is presumed that he knew of the adjournment to the 23d. Ordinance No. 62 was regularly passed and election officers appointed. Can it be contended that the appointment of a committee to ascertain the assessed valuation of the real estate of the city of Weiser for the year 1901, and an order or resolution instructing the city attorney to prepare an ordinance and such other papers as might be necessary to submit to the taxpayers a proposition to vote upon the question of bonding the city, as provided for in the ordinance, could in any way prejudice the rights or interests of any of the citizens of the city? We think not. The mayor or members of the city council might have procured the information they desired as to the assessed valuation of the real estate in the city without a meeting, or any record whatever, and how could it affect the interests of the taxpayers? The mayor could also have instructed the city attorney to prepare an ordinance to submit to the council at a meeting thereafter to be held, and how could it affect the rights of the citizens? It is the passage of the ordinance and the proceedings thereafter that become important. The meeting of June 23d was a continuation of the meeting of June 19th, as shown by the record, and all that was transacted at that meeting was passage of the ordinance, which seems to have been regular, and the appointment of election officers. The law does not require that notice shall be given of meetings of the city council, and it is shown that the mayor and all of the councilmen were present at the first, with the exception of Councilman Ryan, and at the last with the exception of Councilman McCune.

The next question is, Was there a sufficient notice of the time and place of said election published, as contemplated by section 1938 of the Political Code of 1901? (5 Sess. Laws 1899, p. 30.) It says: "Bond Ordinance—Election—Whenecer the common council of such city or the trustees of such town or other legislative body of any such city or town shall deem it advis-

able to issue the coupon bonds of such city or town for any of the purposes aforesaid, the mayor and common council of such city, or the trustees of such town, shall provide therefor by ordinance, which shall specify the purpose of issuing such proposed bonds; if it is to create a new debt, the object thereof must be stated, or, if it is to fund or refund any existing indebtedness, it must be described; and, when it consists of warrants or other securities, they must be described by giving their number, date and the amount and the fund out of which the same, according to the terms, thereof, are payable; and the ordinance shall declare the purpose and the total amount for which such bonds shall be issued, and designate the provisions to be made to pay the interest on such bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of the issuance of the same, and shall also provide for the holding of an election of the qualified electors who are taxpayers of such city or town of which thirty days' notice, to be provided for in such ordinance, shall be given in a newspaper of such city or town designated in said ordinance. Such election shall be conducted as other city elections. The voting at such election must be by ballot, and the ballots used shall be substantially as follows: 'In favor of issuing bonds to the amount of —— dollars for the purpose stated in ordinance No. ——' and 'Against issuing bonds to the amount of —— dollars for the purpose stated in ordinance No. ——.' If, at such election, two-thirds of the qualified electors who are taxpayers in such city or town, voting at such election, assent to the issuing of such bonds and the incurring of the indebtedness thereby created for the purpose aforesaid, such bonds for said purpose shall be issued in the manner hereinafter provided." It appears that a notice was published in the "Weiser Signal" thirty days before the election, and, in addition, the mayor's proclamation was published more than thirty days in the "Weiser Signal" and the "Weiser World," such notice giving full information of the object and purpose of said election. It also appears that the ordinance was published in both of said papers for a period of more than thirty days before the election. The stat-

ute does not require any particular form of notice, but evidently any kind of a notice by the proper officers of the city that informs the people of the object and purpose of the election is a sufficient notice. The sole purpose of the notice is to inform all interested parties, in order that they may register and cast their ballots on the day fixed for the election. We think the mayor's proclamation published in two newspapers for a period of more than thirty days before the day fixed for the election was ample and sufficient notice to all interested parties. Neither the statute nor the ordinance requires the notice to be given to any particular officer. (*Cleveland v. City Council,* 54 S. C. 86, 31 S. E. 871; *Warsop v. City of Hastings,* 22 Minn. 438; *Clark v. City of Janesville,* 10 Wis. 141; *Seymour v. City of Tacoma,* 6 Wash. 427, 33 Pac. 1059; *Hesseltine v. Town of Wilbur,* 29 Wash. 407, 69 Pac. 1094; 1 Dillon on Municipal Corporations, sec. 197, p. 280, note 3; *Williams v. Shoudy,* 12 Wash. 362, 1 Pac. 169; *Wiggins v. City of Lewiston,* ante, p. 527, 69 Pac. 286; Tiedeman on Municipal Corporations, sec. 65; *Territory of Board of Supervisors v. Mohave Co.* 2 Ariz. 248, 12 Pac. 730; *Dishon v. Smith,* 10 Iowa, 117; *People v. Cook,* 14 Barb. 261; McCrary on Elections, secs. 142-149; *State v. Lansing,* 46 Neb. 514, 64 N. W. 1104, 35 L. R. A. 124; Cooley's Constitutional Limitations, 759; *Trimmier v. Bomar,* 20 S. C. 354.) A number of other authorities have been cited by appellant in support of his contention that his demurrer should have been sustained. We have called attention to the above authorities as bearing on all the questions involved in this litigation.

Our conclusion is, that the demurrer to the complaint should have been sustained, and the judgment of the trial court is reversed, and cause remanded for further proceedings consistent with this opinion, with costs to appellants.

Quarles, C. J., sat at the hearing, but took no part in the opinion.

Sullivan, J., concurs.